## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROBERT LEE MORRIS,

      Petitioner,

-vs-
                                   Case No.  8:07-CV-1830-T-27AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner, a State of Florida inmate, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his conviction for lewd and lascivious molestation entered in 2003 by the Sixth Judicial Circuit Court, Pasco County, Florida (Dkt. 1). Respondent filed a response to the petition (Dkt. 9). Petitioner filed a reply to the response (Dkt. 14). Upon consideration of Petitioner's claims, the Court has determined that they either have no merit or are procedurally defaulted. Thus, Petitioner's request for federal habeas relief (Dkt. 1) is DENIED.

### Background

On February 27, 2001, Petitioner was charged by Information with lewd or lascivious molestation (Respondent's Ex. 1, Vol. I at pg. 1). Following a jury trial, Petitioner was found guilty as charged in the Information (Id. at pg. 71). Petitioner was sentenced to 12 years imprisonment, to be followed by 10 years sex offender probation (Id. at pgs. 72-78).

Petitioner appealed. On November 16, 2005, the appellate court affirmed Petitioner's

conviction, but reversed and remanded for the trial court to enter an amended judgment and sentence (Respondent's Ex. 5); *Morris v. State*, 913 So. 2d 1251 (Fla. 2d DCA 2005).[1]

On May 23, 2006, Petitioner filed a motion for post-conviction relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 ("3.850 motion") (Respondent's Ex. 7).  On October 19, 2006, the state trial court denied the 3.850 motion (Respondent's Ex. 8).  On rehearing, the state trial court entered an amended order addressing and denying an overlooked claim on November 26, 2006 (Respondent's Ex. 11).  Petitioner appealed.  On July 18, 2007, the state appellate court per curiam affirmed the denial of Petitioner's 3.850 motion (Respondent's Ex. 14); *Morris v. State*, 961 So. 2d 946 (Fla. 2d DCA 2007) [table].  The appellate court mandate issued on August 8, 2007 (Respondent's Ex. 15).

On October 3, 2007, Petitioner constructively filed his federal habeas petition in the instant action (Dkt. 1).[2]

## Standards of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly

---

[1] The sentence was amended to delete court fees that were erroneously ordered (Respondent's Ex. 1 at Vol. VIII).

[2] Although the Court received Petitioner's petition on October 9, 2007, a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States,* 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn,* 993 F.2d 776, 780 (11th Cir. 1993).

established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995)("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting

3

*Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478,

4

495-96 (1986) (explaining a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted). The *Schlup* Court stated the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995)(denying certificate of probable cause)(footnote omitted).

**Ineffective Assistance of Counsel Standard**

The right to counsel provision of the Sixth Amendment provides the accused the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prevail on a claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland's* two-part test requires a Petitioner to demonstrate "that the counsel's performance was deficient" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." It is presumed that a "lawyer is competent to provide the guiding hand that the

5

defendant needs." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Thus, "the burden rests on

the accused to demonstrate a constitutional violation." *Id*. A defendant is required to prove both

prongs of the *Strickland* test. *Id*. at 697. If a claim fails to satisfy the prejudice component, the

court need not make a ruling on the performance component.

### Discussion

**Ground One**

In Ground One of his petition, Petitioner complains that he was deprived a fair trial

because the prosecutor allowed testimony to be presented that he knew was false. Specifically,

Petitioner asserts that the prosecutor knew that the child victim's testimony that Petitioner's

finger penetrated her vagina was false. Petitioner asserts that the child victim gave a prior

statement to law enforcement officers in which she stated that no digital penetration occurred.

He complains that the state court should have conducted an evidentiary hearing to give Petitioner

the opportunity to present evidence that the prosecutor knew that the child victim's testimony

was false.

Petitioner presented this claim to the state trial court as Ground I in his Rule 3.850 motion

(Respondent's Ex. 7). The state trial court rejected this claim as follows:

> Defendant claims the State allowed false testimony to be presented in violation of
> Giglio v. U.S., 405 U.S. 150 (1972). "To establish a Giglio violation, it must be
> shown that: (1) the testimony given was false; (2) the prosecutor knew the
> testimony was false; and (3) the statement was material." Guzman v. State, 868
> So.2d 498, 505 (Fla. 2003). Defendant first alleges that the victim testified that
> her therapist, Christine Ward, was notified about the incident months after it
> occurred, but a police report indicates Ms. Ward was present at a police interview
> two days after the offense was alleged to have occurred. The police report
> provided by the defendant as Exhibit A, is dated September 27, 2000. The Felony
> Information states that the date of the offense was September 5, 2006 [sic]. The
> victim's testimony is very unclear as to the time periods of when she became

acquainted with Ms. Ward. The victim testified that she knew Ms. Ward approximately three months prior to entering PEMHS and then about an additional two months after entering PEMHS. The victim testified in response to the question of when she told Ms. Ward of the incident that she told her "about five months after that." See Exhibit D: Trial transcript, page 155, lines 2-8. It is unclear if the victim is speaking of the time that had passed from when she first met Ms. Ward or of the time that had passed since she first entered PEMHS or both. See Exhibit D: Trial transcript, page 154-155. There is no evidence that the victim's testimony was false as to the time periods that passed.

Defendant also alleges that the victim testified that she was digitally penetrated although she had previously stated that she had not been. There does appear to be conflicting information as to whether digital penetration occurred. Conflicting testimony does not necessarily mean that what the victim was testifying to at trial did not occur. A <u>Giglio</u> claim requires that the testimony was false and that the prosecutor knew that the testimony was false. In this instance it is unclear if the victim's previous statement to police that she was not digitally penetrated was true or false and there was no way for the State to know. This conflicting information may have been brought out on cross examination of the victim. This ground is denied.

(Respondent's Ex. 11).

A *Giglio* error occurs when "undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." *Ventura v. Attorney Gen., Fla.*, 419 F.3d 1269, 1276 (11th Cir. 2005) (citing *United States v. Agurs*, 427 U.S. 97 (1976)). "In order to prevail on a *Giglio* claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *Tompkins v. Moore*, 193 F.3d 1327, 1339 (11th Cir. 1999). A falsehood is deemed "material" if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995). A witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a

result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94

(1993). Discrepancy is not enough to prove perjury. *See Lambert v. Blackwell*, 387 F.3d 210,

249 (3d Cir. 2004)("There are many reasons testimony may be inconsistent; perjury is only one

possible reason"), *cert. denied*, 544 U.S. 1063 (2005).

      Petitioner presents no evidence to show that the child victim's testimony that Petitioner's

finger penetrated her vagina was false, or that the State knew her testimony was false.  During

trial, the child victim testified that Petitioner put his finger inside her vagina (Respondent's Ex.

1, Vol. II at pgs. 148-50). Petitioner argues that this testimony was false because Officer Barton's

September 27, 2000 report indicates that although the child victim initially told her therapist and

two officers that Petitioner put his finger inside her vagina, she "later backed off that statement

saying that he had only rubbed the exterior area."  (See Respondent's Ex. 7 at Exhibit A).

      Although the child victim may have vacillated at one point regarding whether Petitioner

put his finger inside her vagina or just touched the outside of her vagina, that does not establish

that her testimony at trial was false, and that the prosecutor knew her trial testimony was false.[3]

"A mere claim that a witness gave inconsistent testimony is not enough to charge the

prosecution's knowing use of false testimony; it may well be that the witness' subsequent

statements were true, in which event the claim of inconsistency is not a constitutional objection."

*Price v. Johnston*, 334 U.S. 266, 288 (1948), *overruled on other grounds by McCleskey v. Zant*,

499 U.S. 467 (1991).  Thus, Petitioner does not assert sufficient facts demonstrating the

prosecutor's knowing use of perjured testimony.

---

   [3]The Court notes that according to Petitioner's memorandum of law in support of his petition, the child
victim stated during her deposition on March 21, 2003, that Petitioner "stuck his finger in me." (Dkt. 2 at pg. 11).

Moreover, "[t]here is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object." *Routley v. Singletary*, 33 F.3d 1279, 1286 (11th Cir. 1994) (citing *United States v. Iverson*, 208 U.S. App. D.C. 364, 648 F.2d 737 (D.C. Cir. 1981); *Ross v. Heyne*, 638 F.2d 979 (7th Cir. 1980); *United States v. Meinster*, 619 F.2d 1041 (4th Cir. 1980)).  Petitioner does not assert that prior to trial, his attorney was unaware of the report and the child victim's prior statements.[4]

Finally, Petitioner has not established that there is any reasonable likelihood that the alleged false testimony could have affected the judgment of the jury.  *United States v. Alzate*, 47 F.3d at 1110. First, Nurse Davis testified that when she examined the child victim, she discovered a scar on her hymen, the membrane that is the entrance to the vagina (Respondent's Ex. 1, Vol. II at pg. 70).  Nurse Davis testified that the scar was made by "some type of penetration." (Id.).  She also testified that the scar was consistent with digital penetration (Id. at pgs. 73-74).  Second, Detective Davis testified that while interviewing Petitioner, Petitioner initially denied having slept at the child victim's home on the night of the incident (Id. at pgs. 105-06).  Petitioner subsequently admitted to spending the night at the child victim's home on the night of the incident (Id. at pg. 113).  Petitioner admitted to laying on the floor with the child victim (Id.).  He then stated in pertinent part that the child took his right hand, pushed it down to her vagina, and placed his hand under her clothes and on her vagina  (Id. at pg. 107).  Thus, there was other evidence that corroborated the child victim's testimony.  Third, Petitioner was charged with, and found guilty of lewd or lascivious molestation in violation of Section 800.04(5), Fla.

---

[4]In his memorandum of law, Petitioner asserts his attorney "continually ignored [the report] throughout the prosecution of this cause." (Dkt. 2 at pg. 10).

Stat. (See Respondent's Ex. 1, Vol. I at pgs. 1, 71).  In Florida, the charge of "[l]ewd or

lascivious molestation requires proof of an intentional touching of certain body parts..." *Smith v.*

*State*, 41 So. 3d 1041, 1043 (Fla. 1ˢᵗ DCA 2010). Section 800.04(5)(a) states that "[a] person who

intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or

buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices

a person under 16 years of age to so touch the perpetrator, commits lewd or lascivious

molestation." Thus, the State was not required to prove Petitioner penetrated the child victim's

vagina.[5]  Petitioner admitted that his hand touched the child victim's vagina.  It was the jury's

prerogative to reject Petitioner's explanation that the child victim took his hand and forced it on

to her vagina. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11 Cir. 1987) (it is the responsibility of

the jury to resolve conflicts in testimony).  Accordingly, the Court concludes that the state court's

denial of this claim is neither contrary to, nor an unreasonable application of, clearly established

Federal law.  Thus, Petitioner is not entitled to relief under Ground One.

Finally, the Court disagrees with Petitioner's assertion that he is entitled to an evidentiary

hearing on this claim.  "In deciding whether to grant an evidentiary hearing, a federal court must

consider whether such a hearing could enable an applicant to prove the petition's factual

allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v.*

*Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted).  "[I]f the record refutes the applicant's

factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

evidentiary hearing." *Id*.  Even if Petitioner were able to establish that the child victim's

---

[5]The Court notes that during closing arguments, the prosecutor informed the jury that the State did not need
to prove "that the defendant...penetrated [the child victim.]" (Respondent's Ex. 1, Vol. III at pg. 208).

testimony that digital penetration occurred was false, and that the prosecutor knew the testimony was false, for the reasons noted *supra*, Petitioner cannot show a reasonable likelihood that the alleged false testimony could have affected the judgment of the jury.  Thus, he is not entitled to an evidentiary hearing on this claim.

**Grounds Two and Four**

In Ground Two, Petitioner complains that counsel was ineffective in failing to investigate, depose, and call as witnesses at trial Officers Barton and Gleason.  In Ground Four, Petitioner asserts that counsel was ineffective in failing to properly depose and call as a witness at trial the child victim's therapist, Christina Ward.  Petitioner asserts that these witnesses could have testified that the child victim gave a prior statement on September 27, 2000, in which: 1) she recanted another prior statement on September 25, 2000, that Petitioner had penetrated her vagina with his finger, and 2) stated that Petitioner only touched the outside of her vagina.[6]  It also appears that Petitioner asserts that counsel ineffectively deposed Christina Ward because counsel failed to ask her during the deposition if she was present during the September 27, 2000 interview, and that allowed Ward to avoid being questioned regarding the child victim's recantation of her statement that Petitioner penetrated her vagina with his finger.  Petitioner states that Officer Barton's September 27, 2000 report indicates that Christina Ward was present during his September 27, 2000 interview with the child victim.

---

[6]To the extent Petitioner asserts in his memorandum of law that Officers Martin and Gleason could have testified that during their interview with the child victim she told them that she was previously sexually molested by her friend's dad (see Dkt. 2 at pg. 13), Petitioner did not present this claim to the state court in his Rule 3.850 motion (See Respondent's Ex. 7 at pgs. 8-11).  Thus, the claim is unexhausted and procedurally defaulted.  Petitioner does not show cause and prejudice or that a fundamental miscarriage will result if this Court does not rule on this claim.  Further, for the reasons discussed in Ground Six, *infra*, Petitioner cannot show prejudice as a result of the officers not testifying regarding the prior incident of sexual abuse.

Petitioner presented these claims to the state trial court as Grounds III and V in his Rule

3.850 motion (Respondent's Ex. 7). The state trial court rejected these claims as follows:

> Defendant claims these officers interviewed the victim in the presence of
> Dr. Ward. Defendant states that according to the police report, the victim stated
> during this interview that the defendant touched her vagina, but did not penetrate
> it. The officers would not have needed to be deposed to gain this information
> since as defendant states in his motion, it was in the police report. Any trial
> testimony the officers could have provided regarding what the victim said would
> have been hearsay. This claim is denied.

***

> Defendant claims counsel is ineffective for failing to properly depose witness
> Christina Ward and for failing to call Ms. Ward as a defense witness. Defendant's
> facts regarding this claim are unclear. It appears he is arguing that Ms. Ward could
> have testified that the victim stated that she was first digitally penetrated and then
> said that she was not. Any testimony Ms. Ward could have provided would have
> been hearsay testimony and not admissible. This claim is denied.

(Respondent's Ex. 11 at pgs. 3-4).

First, Petitioner's claim that counsel was ineffective in failing to call these witnesses is

insufficient to support relief. "[E]vidence about the testimony of a putative witness must generally

be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot

simply state that the testimony would have been favorable; self-serving speculation will not sustain

an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)

(footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing,

substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996

WL 107279 at *3 (N.D. Cal. March 7, 1996), *affirmed*, No. 96-15724, 1997 WL 31219 (9th Cir.

January 23, 1997). "Such evidence might be sworn affidavits or depositions from the potential

witnesses stating to what they would have testified." *Id*. Petitioner has failed to present evidence of

actual testimony or any affidavit from the witnesses. Therefore, Petitioner has not made the requisite factual showing.

Second, the state trial court held that the witnesses' proposed testimony would have been inadmissible as hearsay. Although whether trial counsel was constitutionally ineffective is a question of federal law, when the answer to the question turns on whether counsel should have raised issues of state law, § 2254(d) requires the federal court defer to the state court's decision regarding its own laws. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds). Federal courts must abide by the state courts' rulings on matters of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (citations and footnote omitted). It is a fundamental principle state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *See Herring v. Secretary, Dept. of Corrections*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (citing *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)) (internal citations omitted). "What is or is not hearsay evidence in a state court trial is governed by state law." *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir. 1997) (citation omitted).

The Florida courts determined that the proposed witness testimony would have been inadmissible as hearsay. Accordingly, Petitioner fails to show counsel rendered deficient performance in failing to call these witnesses at trial.

Third, Petitioner asserts that these witnesses would have testified that the child victim had retracted her initial statement that Petitioner's finger penetrated her vagina, and instead stated that he only touched the outside of her vagina. As noted *supra*, the State was not required to prove Petitioner penetrated the child victim's vagina. Thus, he cannot show that had these witnesses testified, there was a reasonable probability that the result of the proceeding would have been

different. *Strickland*, 466 U.S. at 694.

Finally, Petitioner asserts counsel was ineffective in failing to ask Christina Ward during her deposition whether she was present during the September 27, 2000 interview of the child victim by Officers Barton and Gleason. Petitioner's claim is premised on his conclusion that Officer Barton's September 27, 2000 report indicates that Christina Ward was present during the September 27, 2000 interview with the child victim. The report states in pertinent part:

> It should be noted that an inconsistency was noted by me during the interview. On the registry report, she indicated that Robert Morris had "stuck his finger in me before." Later, during the interview, she stated that he had not penetrated her, but only rubbed the exterior of her vaginal area.
>
> Upon speaking with Christina Ward, who is a clinical therapist and has worked with Kori for approximately three months, she stated that when Kori initially told her about the incident, she indicated that he had digitally penetrated her, the inconsistency being that she told Christina Ward, myself and Gleason, initially, that penetration had occurred, and later backed off that statement saying that he had only rubbed the exterior area.

(Respondent's Ex. 7 at Exhibit A).

Contrary to Petitioner's position, the report does not indicate that Christina Ward was present when Officers Barton and Gleason interviewed the child victim. The report indicates that Officer Barton spoke with Christina Ward. It does not indicate Ward was present during the interview. The report states that the child victim initially informed Christina Ward and the officers that penetration had occurred. It does not state that the initial statement was a single statement made to Ward and the officers at the same time on September 27, 2000. Thus, Petitioner fails to show counsel rendered deficient performance during her deposition of Christina Ward. Moreover, because the State was not required to prove penetration, Petitioner cannot show prejudice as a result of counsel's failure to ask Christina Ward whether she was present when the child victim told the officers that Petitioner

14

did not penetrate her vagina, but only touched the outside of it.

The state court's denial of these claims of ineffective assistance of counsel was not contrary to or an unreasonable application of *Strickland*. Accordingly, Grounds Two and Four do not warrant federal habeas relief.

**Ground Three**

In Ground Three, Petitioner complains that counsel was ineffective in failing to investigate and present evidence regarding the child victim's extensive mental health history, and in failing to file a motion to compel both disclosure of the child victim's mental health records, and a mental health evaluation of the child victim. Petitioner asserts that the child victim suffered from extreme mental health problems. He states that had counsel spoken to the authors of reports from the Department of Children and Families, she would have discovered the child victim's severe mental health issues. He then avers that counsel could have used the information regarding the child's mental health history to retain an expert who would testify that it was "highly likely" that the child victim fabricated the allegations against Petitioner. Finally, he avers that had the jury known that the child victim had tried to kill her brother, mother, and herself, "injuring her hymen and blaming petitioner would be a small matter." (Dkt. 2 at pg. 17).

Petitioner presented this claim to the state trial court as Ground IV in his Rule 3.850 motion (Respondent's Ex. 7). The state trial court rejected this claim as follows:

> Defendant claims counsel was ineffective for failing to investigate and provide evidence of the victim's poor mental health history and for failing to request that she be compelled to complete a mental health evaluation. Defendant states that counsel was obligated to consult a mental health professional to determine the victim's competency. An evaluation of a victim may be ordered by the court if there is a showing of compelling or extreme circumstances which could establish the need for a psychological evaluation. *Cameio v. State*, 660 So.2d 242 (Fla. 1995).

Defendant simply alleges that the victim changed her testimony on two issues and that she was Baker Acted several times. These facts alone do not rise to the level needed for the court to order an evaluation. The State questioned the victim in regards to her competency to understand the difference between a lie and the truth. It was established through this questioning that the victim was fourteen years old and understood the difference between truths and lies. See Exhibit D: Trial transcript, page 137-138. Defendant does not allege nor does the court find any indication that there was a basis to request a mental health evaluation. Additionally, counsel could not have reviewed the victim's mental health records because they are privileged and generally not subject to disclosure. This claim is denied.

(Respondent's Ex. 11 at pg. 4).

The state court's determination that the child victim's mental health records were privileged and not subject to disclosure, and that there was no basis to request a mental health evaluation of the child victim is a matter of state law. State evidentiary rulings are to be resolved by state courts because they concern state law issues. *See Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002). Because the state court determined that the mental health records were not discoverable, and there was no basis for a court compelled mental health evaluation, Petitioner cannot show counsel's performance was deficient in failing to move to compel an evaluation and disclosure of the child victim's mental health records. Moreover, Petitioner does not show prejudice. He claims that the evaluation and the mental health records would support his claim that the child fabricated the incident. Petitioner, however, wholly fails to demonstrate how the child victim's mental health history was relevant to the issue of whether the child fabricated the incident.[7] Further, his assertion that an expert could have been retained who could have testified that it was "highly likely" that the child victim fabricated the incident, is wholly speculative and unsupported by any facts or expert

---

[7]Petitioner's allegations indicate that the child victim's mental health history consisted of violent acts and "mental breakdowns." (Dkt. 2 at pg. 17). He does not show how this history was relevant to her credibility, or how it would have supported his claim that she fabricated her claim that Petitioner touched her vagina.

testimony. Therefore, Ground Three fails to meet either of the *Strickland* prongs and must be denied.

**Ground Five**

In Ground Five, Petitioner asserts that counsel was ineffective in failing to hire an expert to testify regarding medical photographs and reports. It appears that Petitioner asserts that an expert could have testified that the scar on the child victim's hymen was caused by an injury inflicted prior to the offense involved in this case.

Petitioner presented this claim to the state trial court as Ground VII in his Rule 3.850 motion (Respondent's Ex. 7). The state trial court rejected this claim as follows:

> Defendant claims counsel was ineffective for failing to call an expert witness to review photographs and reports. Defendant claims an expert would have been able to testify that the victim's hymen was torn prior to the offense involved in the instant case. Defendant's claim is speculative and fails to allege any specific information other than his belief that having an expert would not have hurt his case. Conclusory claims cannot be the basis for postconviction relief. See Wright v. State, 857 So. 2d 861 (Fla. 2003). This claim is denied.

(Respondent's Ex. 11 at pg. 5).

This Court agrees with the state trial court. Petitioner's allegations are vague and conclusory and are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See United States v. Cranshaw*, 817 F. Supp. 723, 728 (N.D. Ill. 1993), *aff'd without opinion*, 23 F.3d 410 (7th Cir. 1994), *cert. denied*, 513 U.S. 953 (1994). Self-serving speculation about potential witness testimony is generally insufficient to support a claim of ineffective assistance of counsel. Petitioner must provide evidence, not mere conclusory allegations that counsel overlooked exculpatory information. *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991); *cf. Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (speculation

insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

Further, Petitioner fails to establish prejudice as a result of trial counsel not calling an expert witness at trial. To establish prejudice, Petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). Because Petitioner fails to proffer any expert testimony, he fails to demonstrate a reasonable probability that, but for counsel's failure to call expert witnesses at trial, the result of the trial would have been different.

The state trial court's rejection of Petitioner's ineffective assistance of counsel claim constitutes a decision that was neither contrary to, nor an unreasonable application of, the *Strickland* two-part test. Accordingly, Petitioner is not entitled to relief on Ground Five.

**Ground Six**

In Ground Six, Petitioner complains that counsel was ineffective in failing to investigate a 1995 child-on-child sexual abuse report. Petitioner acknowledges that counsel did obtain a copy of the 1995 report. He complains, however, that counsel should have more efficiently investigated the report, and called the author of the report as a witness. He asserts that "[i]f the report contained information, or a reasonable interview of the author thereof, that indicated penetration, the same would have provided explanation as to how the injury (that caused the scar Nurse Davis discovered on the child victim's hymen in 2000) occurred." (Dkt. 2 at pg. 27).

Petitioner presented this claim to the state trial court as Ground II in his Rule 3.850 motion

(Respondent's Ex. 7).  The state trial court rejected this claim as follows:

> Defendant claims trial counsel was ineffective for failing to investigate a 1995 child
> sexual abuse report and for failing to call the author of the report as a witness.
> Defendant claims there was testimony at the trial that the victim had a tear on her
> hymen and counsel should have investigated the allegation of the 1995 child abuse
> which may have explained the tear on the hymen. Trial counsel informed the court
> that the report was not very specific and she wished to compel further information
> regarding the report. The State informed the court that it had checked its office to see
> if there was any additional information regarding this report and that it had also
> checked with the Sheriff's Department and the people that generated the report to see
> if there was any further information available and found that there was not. See
> Exhibit D: Trial transcript, pages 4-5. Based on the State's representations to the
> court there was no indication that there was any further information that counsel
> could have acquired in reference to the report. Counsel requested a continuance to
> further investigate the report, but the request was denied because of the State's
> representation that there was no further information regarding the report. See Exhibit
> D: Trial transcript, pages 4-9. Any issues regarding the court's ruling on the motion
> to continue should have been raised on direct appeal. Moreover, trial counsel did call
> the victim as a witness and asked her if someone else had tried to have sex with her.
> See Exhibit D: Trial transcript, pages 169-170. Counsel clearly questioned the victim
> based on the sexual abuse report in an attempt to explain how the tear on the hymen
> may have occurred. This claim is denied.

(Respondent's Ex. 11 at pg. 3).

Petitioner cannot show he was prejudiced by counsel failing to further investigate the 1995

sexual abuse report or call the author of that report as a witness.  Petitioner presents no evidence that

the 1995 sexual abuse involved penetration of the child victim's vagina.  Before trial, counsel

informed the court that the report was "not very specific" and "[a]ll it says under the findings

category is some indicators."  (Respondent's Ex. 7, Vol. II at pg. 4).  The State represented that its

investigation revealed no further information regarding the report (Id. at pgs. 4-5).  During trial, the

child victim testified that during the prior incident of sexual abuse, the perpetrator touched her on

her breasts, and did not touch her vagina (Id. at pgs. 170-71).  She further testified that nobody other

than Petitioner ever touched her vagina (Id. at pg. 171).  Petitioner's self-serving speculation that had

counsel further investigated the report, she may have discovered that the prior incident of sexual abuse involved penetration of the child victim's vagina is insufficient to support a claim of ineffective assistance of counsel. Petitioner must provide evidence, not mere conclusory allegations that counsel overlooked exculpatory information. *Barkauskas*, 946 F.2d at 1295.

The state trial court's rejection of Petitioner's ineffective assistance of counsel claim constitutes a decision that was neither contrary to, nor an unreasonable application of, the *Strickland* two-part test. Accordingly, Petitioner is not entitled to relief on Ground Six.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED**  (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on December 20th, 2010.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
          Counsel of Record

21